IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PIZZA HUT, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| EYM PIZZA OF GEORGIA, LLC; | § | |
| EYM PIZZA OF ILLINOIS, LLC; | § | |
| EYM PIZZA OF INDIANA, LLC; | § | Civil Action No.  3:24-cv-1404 |
| EYM PIZZA OF SC, LLC; | § | |
| EYM PIZZA OF WISCONSIN, LLC; | § | |
| EDUARDO DIAZ, an individual; | § | |
| EYM PIZZA, L.P.; | § | |
| EYM FOODS II, LLC; AND | § | |
| EDUARDO DIAZ, as trustee of the | § | |
| EDUARDO DIAZ 2017 INVESTMENT | § | |
| TRUST, | § | |
| | § | |
| *Defendants.* | § | |

## PIZZA HUT, LLC'S ORIGINAL COMPLAINT

Plaintiff Pizza Hut, LLC ("Pizza Hut") files this Original Complaint against EYM Pizza of Georgia, LLC, EYM Pizza of Illinois, LLC, EYM Pizza of Indiana, LLC, EYM Pizza of SC, LLC, EYM Pizza of Wisconsin, LLC (collectively, the "EYM Franchisees," and each an "EYM Franchisee") and against Eduardo Diaz ("Diaz") as an individual, EYM Pizza, L.P., EYM Foods II, LLC, and Eduardo Diaz as trustee of the Eduardo Diaz 2017 Investment Trust (collectively, the "Guarantor Defendants" and together with EYM Franchisees, the "EYM Parties").

### I.   PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Pizza Hut, LLC is a citizen of the States of North Carolina and Kentucky. Pizza Hut has one member, which is Pizza Hut Guarantor, LLC. Pizza Hut Guarantor, LLC has one member, which is Pizza Hut Holdings, LLC. Pizza Hut Holdings, LLC has one member,

which is YUM! Brands, Inc. YUM! Brands, Inc. is a North Carolina corporation with its principal place of business located at 1900 Colonel Sanders Lane, Louisville, Kentucky 40213.

2.     Defendant EYM Pizza of Georgia, LLC is a citizen of the State of Texas because the sole member of EYM Pizza of Georgia, LLC is EYM Pizza, L.P., and EYM Pizza, L.P. is a citizen of the State of Texas as set forth below. EYM Pizza of Georgia, LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

3.     Defendant EYM Pizza of Illinois, LLC is a citizen of the State of Texas because the sole member of EYM Pizza of Illinois, LLC is EYM Pizza, L.P., and EYM Pizza, L.P. is a citizen of the State of Texas as set forth below. EYM Pizza of Illinois, LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

4.     Defendant EYM Pizza of Indiana, LLC is a citizen of the State of Texas because the sole member of EYM Pizza of Indiana, LLC is EYM Pizza, L.P., and EYM Pizza, L.P. is a citizen of the State of Texas as set forth below. EYM Pizza of Indiana, LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

5.     Defendant EYM Pizza of SC, LLC is a citizen of the State of Texas because the sole member of EYM Pizza of SC, LLC is EYM Pizza, L.P., and EYM Pizza, L.P. is a citizen of the State of Texas as set forth below. EYM Pizza of SC, LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

6. Defendant EYM Pizza of Wisconsin, LLC is a citizen of the State of Texas because the sole member of EYM Pizza of Wisconsin, LLC is EYM Pizza, L.P., and EYM Pizza, L.P. is a citizen of the State of Texas as set forth below. EYM Pizza of Wisconsin, LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

7. Defendant Eduardo Diaz is a natural person and citizen of the State of Texas. On information and belief, Diaz is the sole trustee and sole member of the Eduardo Diaz 2017 Investment Trust. Diaz may be served with process at 4925 N. O'Connor Road, Suite 200, Irving, Texas 75062-2787 or wherever he may be found.

8. Defendant EYM Foods II, LLC is a citizen of the State of Texas. EYM Foods II, LLC has two members—Diaz and the Eduardo Diaz 2017 Investment Trust. Diaz is a citizen of the State of Texas. On information and belief, Diaz is the sole trustee and sole member of the Eduardo Diaz 2017 Investment Trust. EYM Foods II, LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

9. Defendant EYM Pizza, L.P. is a citizen of the State of Texas. EYM Pizza, L.P.'s general partner is EYM Group, Inc.,[1] which is a Texas corporation with its principal place of business located at 4925 N. O'Connor Road, Suite 200, Irving, Texas 75062-2787. EYM Pizza, L.P.'s limited partner is EYM Foods II, LLC, which is a citizen of the State of Texas as set forth above. EYM Pizza, L.P. may be served with process through its registered agent, Corporation

---

[1] Records provided by the EYM Parties identify EYM Group II, Inc. as EYM Pizza, L.P.'s general partner, but records from the Texas Secretary of State indicate that EYM Group, Inc. is EYM Pizza, L.P.'s general partner. Whether EYM Pizza, L.P.'s general partner is EYM Group, Inc. or EYM Group II, Inc. does not affect EYM Pizza, L.P.'s citizenship because EYM Group II, Inc. is also a Texas corporation with its principal place of business located at 4925 N. O'Connor Road, Suite 200, Irving, Texas 75062-2787.

Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and, with respect to certain claims, 28 U.S.C. § 1367. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     This Court has personal jurisdiction over each EYM Franchisee because each one expressly consented to the jurisdiction of this Court by their written agreements with Pizza Hut.

12.     This Court has personal jurisdiction over each Guarantor Defendant because each one resides in the State of Texas and expressly consented to the jurisdiction of this Court by their written agreements with Pizza Hut.

13.     Venue is proper in the United States District Court for the Northern District of Texas, Dallas Division, because the EYM Parties agreed to venue in Dallas County, Texas, in the Forbearance Agreement and LTRA (defined below). Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Pizza Hut's claims occurred in this District. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(1) because at least one of the EYM Parties resides in this District, and all of the EYM Parties are residents of the State of Texas.

## II.   FACTUAL BACKGROUND COMMON TO ALL CLAIMS

**A.   Pizza Hut and the EYM Franchisees entered into a franchise relationship.**

14.     Pizza Hut is the franchisor of Pizza Hut® restaurants and one of the world's largest and most successful restaurant companies, offering pizza, pasta, wings, and other Italian-style food items in almost 20,000 restaurants in over 73 countries, including more than 6,500

Pizza Hut restaurants in the United States. Protecting Pizza Hut's brand and brand quality is essential to maintaining a high level of customer satisfaction.

15.     Pizza Hut was built on the belief that pizza night should be special, and Pizza Hut carries that belief into everything it does. Pizza Hut remains a true innovator in the pizza category.  In fact, in 2022 Pizza Hut received *QSR Magazine*'s Transformational Brand of the Year Award for 2021.[2] In 2023, *QSR Magazine* announced that Pizza Hut was a leader in heritage appeal and modern innovations.[3]

16.     The EYM Franchisees are Pizza Hut franchisees operating approximately 140 Pizza Hut restaurants across 5 states: Georgia, South Carolina, Illinois, Indiana, and Wisconsin. The EYM Franchisees operated these restaurants under seven franchise agreements, as amended from time to time (collectively, the "Franchise Agreements" and each a "Franchise Agreement"). The Franchise Agreements are attached hereto as Exhibits 1 through 7.[4]

17.     Each of the EYM Franchisees agreed to develop their restaurants in a manner consistent with terms in the Asset Partner Plan ("APP"), which required the EYM Franchisees to undertake certain upgrades, remodels, and other actions.

18.     Pizza Hut and the EYM Franchisees later entered into the Asset Capital Efficiency Agreement ("ACE Agreement"), which modified the development obligations under the APP.

---

[2] https://www.qsrmagazine.com/reports/qsrs-transformational-brand-2021-pizza-hut-finds-its-north-star/   (last visited  June  7,  2024);   https://blog.pizzahut.com/pizza-hut-named-qsrs-transformational-brand-of-2021/   (last visited June 7, 2024).

[3] https://www.qsrmagazine.com/food/menu-innovations/pizza-hut-strikes-gold-with-heritage-appeal-and-modern-innovations/ (last visited June 7, 2024).

[4] EYM Pizza of Wisconsin, LLC is successor in interest to a prior Pizza Hut franchisee for Franchise Agreement #1225. *See* Release and Assignment attached hereto as Exhibit 26.

19.     The Asset Capital Efficiency Program ("ACE Program") gives Pizza Hut's franchisees various incentives that, among other things, help facilitate the transition of dine-in restaurants to delivery-focused restaurants.

20.     The Guarantor Defendants executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1225 between EYM Pizza of Wisconsin, LLC and Pizza Hut, LLC (the "1225 Guaranty"), which is attached hereto as Exhibit 8.

21.     The Guarantor Defendants executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1225A between EYM Pizza of Illinois, LLC and Pizza Hut, LLC (the "1225A Guaranty"), which is attached hereto as Exhibit 9.

22.     The Guarantor Defendants executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1462 between EYM Pizza of Illinois, LLC and Pizza Hut, LLC (the "1462 Guaranty"), which is attached hereto as Exhibit 10.

23.     The Guarantor Defendants executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1463 between EYM Pizza of Indiana, LLC and Pizza Hut, LLC (the "1463 Guaranty"), which is attached hereto as Exhibit 11.

24.     The Guarantor Defendants executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1481 between EYM Pizza of Georgia, LLC and Pizza Hut, LLC (the "1481 Guaranty"), which is attached hereto as Exhibit 12.

25.     The Guarantor Defendants executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1482 between EYM Pizza of SC, LLC and Pizza Hut, LLC (the "1482 Guaranty"), which is attached hereto as Exhibit 13.

26.     Diaz and EYM Pizza, L.P. executed a guaranty agreement in favor of Pizza Hut for Franchise Agreement #1486 between EYM Pizza of Illinois, LLC and Pizza Hut, LLC (the "1486 Guaranty"), which is attached hereto as Ex. 7 at App'x F, App'x G. EYM Foods II, LLC and the Eduardo Diaz 2017 Trust each subsequently agreed to be bound by the Personal Guaranty and Assumption of Obligations appended to FA 1486 as Appendix F and Appendix G as if they were signatories to the same. The 1225 Guaranty, 1225A Guaranty, 1462 Guaranty, 1463 Guaranty, 1481 Guaranty, 1482 Guaranty, and 1486 Guaranty are collectively referred to as the "Guaranties" herein.

**B.      The EYM Franchisees breached their Franchise Agreements and underperformed.**

27.     From 2019 to 2023, the Pizza Hut system's same-store sales increased 7%. Within that time, the EYM Franchisees' restaurants experienced a same-store sales *decline* of 10%—a 17% miss from the rest of the Pizza Hut system.

28.     The EYM Franchisees also have an undisputed history of late paying fees owed to Pizza Hut and other interested entities pursuant to the Franchise Agreements.

29.     The EYM Franchisees' record for operations has been poor.

30.     Pizza Hut restaurants are scored on a 1-5 scale during each of 13 reporting periods per year, and a score of 2 or less is considered failing.

31.     The EYM Franchisees' restaurants failed at a 12.4% rate from Period 3, 2023 (beginning February 21, 2023) to Period 2, 2024 (ending February 19, 2024). The average failure rate for the Pizza Hut system was 3.2% over the same timeframe.

32.     There are approximately 65 franchisees in Pizza Hut's system who are considered large franchisees. The EYM Franchisees qualify as large franchisees in the Pizza Hut system, and their operational performance is among the worst of all large Pizza Hut franchisees.

33.     The EYM Franchisees fell out of compliance with their development obligations under the ACE Agreement.

34.     By September 2022, the EYM Franchisees were paying Pizza Hut late on a consistent basis and had failed to pay a critical vendor for the EYM Franchisees' operations.

35.     On or about September 28, 2022, Pizza Hut sent Diaz and the EYM Franchisees a Notice of Concern regarding the EYM Franchisees' failure to pay a vendor and required remediation efforts.

36.     By December 13, 2022, the EYM Franchisees were more than $3,000,000 in arrears with regard to obligations owed to Pizza Hut and other interested entities pursuant to the Franchise Agreements.

37.     Pizza Hut sent Diaz and the EYM Franchisees a Notice of Default on or about December 13, 2022 (the "December 2022 Default"), which is attached hereto as Exhibit 14. At this time, Pizza Hut encouraged the EYM Franchisees "to begin pursuing a sale of [the EYM Franchisees'] System Restaurants."

38.     The EYM Franchisees eventually paid all amounts identified in the December 2022 Default.

39.     The EYM Franchisees then fell into arrears again. Pizza Hut sent Diaz and the EYM Franchisees a second Notice of Default in March 2023 based on the EYM Franchisees' failure to pay more than $2,500,000 in fees (the "March 2023 Default"), which is attached hereto as Exhibit 15.

40.    Pizza Hut issued a third Notice of Default in May 2023 based on the EYM Franchisees' failure to cure the March 2023 Default and failure to pay additional amounts that had since come due (the "May 2023 Default"), which is attached hereto as Exhibit 16.

41.    The May 2023 Default provided notice of Pizza Hut's intent to terminate the EYM Franchisees' participation in the ACE Program if the EYM Franchisees did not timely cure their defaults under the ACE Agreement.

42.    Diaz and the EYM Franchisees acknowledged and agreed that the "[EYM Franchisees] [were] in default under the Franchise Agreements and [Pizza Hut] has sent the Default Notice describing the defaults (the 'Existing Defaults'), which Existing Defaults were not timely cured and provide[d] Pizza Hut a basis for termination of the Franchise Agreements." Ex. 17, § 2.1.

## C.    Pizza Hut entered into a Forbearance Agreement with Diaz and the EYM Franchisees instead of exercising its termination rights under the Franchise Agreements.

43.    Pizza Hut did not immediately exercise its termination rights under the Franchise Agreements.

44.    Instead, Pizza Hut agreed to forbear from exercising its termination rights while the EYM Franchisees pursued a sale of the restaurants. To that end, Diaz, the EYM Franchisees, and Pizza Hut executed a forbearance agreement dated August 2, 2023 (the "Forbearance Agreement"), which is attached hereto as Exhibit 17.[5]

45.    Diaz and the EYM Franchisees agreed that, in the event they failed to meet any condition of Pizza Hut's forbearance under the Forbearance Agreement (the "Forbearance

---

[5] Diaz and the EYM Franchisees agreed that, as of the date of the Forbearance Agreement, they were indebted to Pizza Hut and other interested entities at least in the amount of $616,474.51 as of July 24, 2023.

**PIZZA HUT, LLC'S ORIGINAL COMPLAINT**                                        **Page 9 of 26**

Conditions"), Diaz and the EYM Franchisees would enter into a relationship agreement with

Pizza Hut containing Pizza Hut's then-current requirements.

46.     Among other Forbearance Conditions, Diaz and the EYM Franchisees agreed:

a.  To "pay on a monthly basis, no later than 20 days after such amounts are due, any and all amounts to [Pizza Hut] (or its designee(s), as the case may be) for royalties, advertising fees, and any other amounts typically paid to [Pizza Hut] by [EYM Franchisees] . . . ."

b.  To "continue normal business operations with all landlords and vendors necessary for operation of the Restaurants (and comply with any agreements/contracts governing relationships with the same) and remain current with all rent payments or other amounts owed to such landlords and vendors."

c.  To "provide, within 45 days after quarter end, quarterly consolidated financial statements, quarterly store-level profit and loss statements."

d.  To "either (i) be and remain at or above the 3rd quartile in [Pizza Hut]'s sales and operations metrics (currently 5-Star), as measured by [Pizza Hut] on a 13-period rolling basis, or (ii) maintain a 'C' or higher rating in 5-Star."

e.  To meet sale milestones to enter into a letter of intent with a purchaser by November 15, 2023, and enter into a binding written asset purchase agreement with a purchaser by January 15, 2024.

f.  That time was of the essence in all respects.

47.     In exchange for these assurances, Pizza Hut agreed not to terminate the Franchise

Agreements "until the earlier to occur of":

(a) Sale and satisfaction of all outstanding obligations due under Franchise Agreements and/or any other agreements between the parties, at which time [Pizza Hut] will waive the Existing Defaults; or (b) the date upon which any of the Forbearance Conditions . . . is not strictly complied with or otherwise satisfied by the date required (if a date is set forth in such Forbearance Condition) (the "Forbearance Period").

48.     Pizza Hut executed the Forbearance Agreement with the intent to support a sale

of the EYM Franchisees' restaurants to one or more new or different franchisees.

**D.**    **Pizza Hut continued efforts to facilitate a sale of the EYM Franchisees' restaurants when Diaz and the EYM Franchisees violated multiple Forbearance Conditions.**

49.    Diaz and the EYM Franchisees did not comply with the Forbearance Conditions.

50.    Diaz and the EYM Franchisees failed to meet the sale milestones identified in the Forbearance Agreement.

51.    Diaz and the EYM Franchisees did not put the EYM Franchisees' Georgia and South Carolina Pizza Hut restaurants on the market until on or about November 21, 2023.

52.    Diaz and the EYM Franchisees neglected to pursue multiple letters of intent that they received during the Forbearance Period.

53.    Diaz and the EYM Franchisees did not timely make required payments during the Forbearance Period.

54.    Diaz and the EYM Franchisees did not remain at or above the 3rd quartile in Pizza Hut's sales and operations metrics as measured by Pizza Hut and did not maintain a "C" or higher rating in 5-Star during the Forbearance Period.

55.    Diaz and the EYM Franchisees did not remain current on financial obligations to pest control service Federal Service Corporation during the Forbearance Period.

56.    Diaz and the EYM Franchisees received multiple default notices and notices of non-payment from landlords during the Forbearance Period.

57.    Diaz and the EYM Franchisees did not remain current on payments to other landlords and vendors during the Forbearance Period.

58.    Diaz and the EYM Franchisees did not provide quarterly consolidated financial statements or quarterly store-level profit and loss statements within 45 days after quarter end during the Forbearance Period.

59.     While these violations could have resulted in immediate termination of the Franchise Agreements under the Forbearance Agreement, Pizza Hut began negotiating new agreements that would give the EYM Parties even more time to diligently pursue a sale of the restaurants while providing Pizza Hut with proper assurances that the EYM Franchisees would maintain acceptable operations in the interim. Specifically, Pizza Hut proposed an amended and restated forbearance agreement and a relationship agreement. Despite months of negotiations, the EYM Parties refused to sign these agreements.

**E.      The EYM Parties' defaults prompted Pizza Hut to terminate the Forbearance Period and Franchise Agreements.**

60.     The EYM Parties' repeated failure to timely pay all amounts owed for royalties and advertising fees, among other obligations, prompted Pizza Hut to deliver additional default notices, which confirmed the EYM Franchisees' habitual defaults for which Pizza Hut was not contractually required to afford any opportunity to cure.

61.     Pizza Hut delivered notice of termination of the Forbearance Period and the EYM Franchisees' Participation in the ACE Program to Diaz and the EYM Franchisees on February 23, 2024 (the "Forbearance Period Termination Notice"), which is attached hereto as Exhibit 18.

62.     After sending the Forbearance Period Termination Notice, Pizza Hut nonetheless continued to negotiate with the EYM Parties in an effort to enter into a new forbearance agreement and relationship agreement that would give the EYM Parties even more opportunity to sell the EYM Franchisees' restaurants. Despite Pizza Hut's efforts, the EYM Parties persisted in their refusal to sign the proposed agreements.

63.     On or about February 27, 2024, the EYM Parties provided notice that one of the restaurants operated by EYM Pizza of Georgia, LLC had closed effective on or about February 26, 2024. Pizza Hut did not authorize closure of this restaurant.

64.     After months of the EYM Parties' contractual breaches, mismanagement, and delays, Pizza Hut sent notices of termination and notices of intent to terminate the Franchise Agreements on March 4, 2024 (collectively, "Post-Forbearance Termination Notices"), a compilation of which is attached hereto as Exhibit 19.[6]

**F.     The EYM Franchisees sought preliminary injunctive relief, which the Court denied.**

65.     After receiving the Post-Forbearance Termination Notices, the EYM Franchisees sought and obtained a Temporary Restraining Order ("TRO") in the 14th Judicial District Court of Dallas County, Texas (the "State Court Action"), temporarily enjoining Pizza Hut from enforcing its contractual rights.

66.     After obtaining the TRO, the EYM Franchisees continued to operate all of their Pizza Hut restaurants and incur additional obligations under the Franchise Agreements.

67.     Pizza Hut sent the EYM Parties an additional notice of default in early March 2024 based on the EYM Parties' continued failure to pay past-due fees (the "March 2024 Default"), which is attached hereto as Exhibit 20.

68.     Pizza Hut removed the State Court Action to the United States District Court for the Northern District of Texas (Dallas Division) as Civil Action No. 3:24-cv-646-X.

---

[6] The Post-Forbearance Termination Notices for Illinois, Indiana, and Wisconsin provided notice of *intent to terminate* in advance of termination and expressly allowed restaurants in Illinois to continue operating until termination became effective on April 3, 2024, and restaurants in Indiana and Wisconsin to continue operating until termination became effective on June 3, 2024.

69.     After Pizza Hut removed the State Court Action to the federal Court, the EYM Franchisees moved for a preliminary injunction.

70.     On April 2, 2024, the Court denied the EYM Franchisees' motion for preliminary injunction. The TRO expired that same day.

**G.     Pizza Hut entered into post-termination agreements with the EYM Parties instead of enforcing its termination rights under the Franchise Agreements.**

71.     When the TRO expired, EYM Pizza of Georgia, LLC, EYM Pizza of Illinois, LLC, and EYM Pizza of SC, LLC no longer had a right to operate their respective Pizza Hut restaurants or use Pizza Hut's trademarks or trade dress.

72.     The EYM Parties have acknowledged and agreed that "as of [March 4, 2024], [EYM] Franchisees were in default under the Franchise Agreements and [Pizza Hut] sent Default Notices describing the defaults on December 13, 2022, March 6, 2023, May 9, 2023, January 10, 2024, January 31, 2024, and February 22, 2024 . . . , which provided [Pizza Hut] with a basis for termination of the Franchise Agreements; [and] as of February 23, 2024, [EYM] Franchisees and Diaz were not in compliance with the forbearance conditions set forth in the Forbearance Agreement, and as a result [Pizza Hut] was not obligated to forbear from terminating the Franchise Agreements . . . ." Ex. 22, § 2.3.

73.     The EYM Parties further acknowledged that Pizza Hut properly terminated or sent notice of intent to terminate the Franchise Agreements. Ex. 21, Recitals H-I.

74.     But Pizza Hut did not immediately enforce its termination rights under the Franchise Agreements.

75.    Instead, Pizza Hut gave the EYM Parties one last opportunity to avoid closure of the EYM Franchisees' restaurants and adhere to a sale process that was appropriate under the circumstances.

76.    On or about April 5, 2024, Pizza Hut proposed agreements that would reinstate the Franchise Agreements for a limited term and govern any continued efforts by the EYM Parties to sell the EYM Franchisees' restaurants.

77.    The agreements proposed by Pizza Hut were extensively negotiated by the parties—all of whom were represented by counsel—over multiple days. During these negotiations, Pizza Hut made multiple concessions requested by the EYM Parties.

78.    On April 12, 2024, Pizza Hut and the EYM Parties executed a Relationship Agreement ("Relationship Agreement," attached hereto as Exhibit 21), a Limited Term Reinstatement Agreement ("LTRA," attached hereto as Exhibit 22), and a Consent to Disclose ("Consent to Disclose," attached hereto as Exhibit 23, and together with the Relationship Agreement and LTRA, the "Post-Termination Agreements").

79.    By signing the Post-Termination Agreements, the EYM Parties agreed that their continued operation of and efforts to sell the EYM Franchisees' restaurants remained subject to the EYM Parties' compliance with certain reinstatement conditions specified in the LTRA ("Reinstatement Conditions").

80.    Among other Reinstatement Conditions, the EYM Parties agreed:

a.    To "pay all past due amounts owed to [Pizza Hut], its subsidiaries and affiliates, including all amounts set forth on <u>Schedule B</u> that have not been paid as of the date of [the] LTRA on or before 3:00 PM CDT on April 16, 2024."

b.    To "pay on a monthly basis, no later than 20 days after such amounts are due, any and all amounts to [Pizza Hut] (or its designee(s), as the case may be) for royalties, advertising fees, and any other amounts typically paid to [Pizza Hut] by

[EYM] Franchisees or to any entities as may be required by the Franchise Agreements (e.g. I.P.H.F.H.A.) as aforesaid, for the period arising on and after the date of this LTRA."

c. To "refrain from temporarily or permanently closing any of the Restaurants without [Pizza Hut's] consent, unless required by applicable law or governmental authority."

d. To "[b]y May 1, 2024, . . . send [Pizza Hut] records showing that [EYM] Franchisees are current with respect to all obligations owed to the landlords and vendors identified in <u>Schedule D</u>."

e. To "continue normal business operations with all landlords and vendors necessary for operation of the Restaurants (and comply with any agreements/contracts governing relationships with the same) and remain current with all rent payments or other amounts owed to such landlords and vendors."

f. To "obtain and maintain at least a 2.1 rating on the 5-Star Scorecard for each System Restaurant within 28 days of Effective Date of this LTRA."

g. To "engage the Appraiser (as defined in and pursuant to the procedures of the Relationship Agreement) to determine the fair market value of the [EYM] Franchisees' Pizza Hut business (the "Determined Fair Market Value") in accordance with the procedures set forth in the Relationship Agreement by April 16, 2024."

h. To "be in compliance with the Relationship Agreement . . . , including the financial reporting obligations set forth in Relationship Agreement Section 5.b.ii." The EYM Parties were required to report "on a quarterly basis, no later than 45 days following the end of each such fiscal quarter, store-level profit and loss statements for each of the Restaurants," and "on a quarterly basis, no later than 45 days following the end of each such fiscal quarter, together with the required financial and other statements, a Compliance Certificate in the form of Exhibit C-1 (the "Compliance Certificate") that has been certified by the finance director  of the EYM Parties."

i. To "deliver[] to [Pizza Hut] the Required Diligence as set forth and defined on <u>Schedule C</u>" by April 16, 2024, including:

    i. "Previous three years of annual and quarterly financial statements of [EYM] Franchisees (including audited or reviewed as available for annual statements), including P&Ls, balance sheets and notes thereto."

    ii. "P&Ls by restaurant (including all G&A) for the trailing twelve months."

    iii. "Breakdown of all G&A expenses."

iv.   "Fixed asset ledger."

81.   In exchange for these assurances, Pizza Hut agreed

that the terms and conditions the Franchise Agreements are each hereby reinstated in their entirety solely for the limited term lasting until the earliest of (1) the date set forth in the applicable Franchise Agreement as amended by Section 2.8 of [the] LTRA; (2) Sale and satisfaction of all outstanding obligations due under the Franchise Agreements and/or any other agreements between the parties; and (3) the date upon which any of the Reinstatement Conditions . . . is not strictly complied with or otherwise satisfied by the date required (if a date is set forth in such Reinstatement Condition) (the "License Term").

82.   Pizza Hut executed the Post-Termination Agreements with the intent to support a sale of the EYM Franchisees' restaurants to one or more new or different franchisees.

## H.   Pizza Hut sent multiple reminders regarding the EYM Parties' obligations under the Franchise Agreements and Post-Termination Agreements.

83.   The EYM Parties immediately breached the LTRA by failing to pay amounts set forth in LTRA Schedule B by April 16, 2024. The EYM Parties had agreed that, "[i]f the past due amounts [set forth in LTRA Schedule B] are not paid by 3:00 PM CDT on April 16, 2024, Franchisor may immediately terminate the License Term."

84.   The EYM Parties also failed to timely deliver diligence materials set forth and defined on LTRA Schedule C, which were also due on April 16, 2024.

85.   The EYM Parties failed to comply with their obligations under Schedules B and C of the LTRA even though counsel for Pizza Hut had reminded counsel for the EYM Parties on April 16, 2024, that payment of the amounts set forth in LTRA Schedule B and delivery of the diligence materials set forth and defined on LTRA Schedule C were due on that day.

86.   Nevertheless, rather than terminate the License Term at that time, Pizza Hut extended the EYM Franchisees' deadlines to pay amounts set forth in LTRA Schedule B and to provide required diligence until April 19, 2024.

87.     Although the EYM Parties made a payment to Pizza Hut on April 19, 2024, they did not provide all required diligence by the extended deadline.

88.     The EYM Parties had not retained an appraiser by the end of April 2024. The EYM Parties still have not provided Pizza Hut with evidence of a valid and enforceable engagement agreement between the EYM Parties and an appraiser.

89.     The EYM Parties violated multiple Reinstatement Conditions after April 19, 2024, including but not limited to the EYM Parties failure to provide required diligence and financial reporting, pay fees within twenty days after such amounts became due, confirm that the EYM Franchisees are current with respect to all rent payments or other amounts owed to their landlords and vendors, remain current with the EYM Franchisees' landlords and vendors, and meet minimum operating standards in multiple restaurants.

90.     Some of the required diligence that the EYM Parties were required to deliver to Pizza Hut remains outstanding, including at least three years of quarterly balance sheets, a breakdown of G&A expenses, a fixed asset ledger, reviewed or audited 2020 financials, or alternatively reviewed or audited 2023 financials.

91.     The EYM Parties also did not send Pizza Hut records showing that the EYM Franchisees were current with respect to all obligations owed to landlords and vendors identified in LTRA Schedule D by May 1, 2024. The EYM Parties still have not sent these records to Pizza Hut, despite multiple follow-up communications requesting the same.

92.     By May 21, 2024, the EYM Franchisees had temporarily closed at least five restaurants for at least a full week without authorization from Pizza Hut.

93.     By May 21, 2024, the EYM Parties had not paid approximately $953,144.38 in total fees owed to Pizza Hut and other interested entities for royalties, advertising fees, and other amounts due under the terms of the Franchise Agreements even though such amounts remained outstanding more than 20 days after such amounts were originally due (the "Past-Due LTRA Payment").

94.     As of May 21, 2024, the EYM Franchisees failed to obtain and maintain at least a 2.1 rating on the 5-Star Scorecard for 16 of their restaurants.

95.     Based on the EYM Parties' failure to comply with multiple Reinstatement Conditions, on or about May 22, 2024, Pizza Hut sent the EYM Parties a Notice of Default under Limited Term Reinstatement Agreement, Relationship Agreement, Franchise Agreements, and Guaranties (the "LTRA Default," attached hereto as Exhibit 24). The LTRA Default included the EYM Parties' failure to timely pay the Past-Due LTRA Payment.[7]

96.     The LTRA Default afforded the EYM Parties an opportunity to cure the noticed defaults, including the default for the Past-Due LTRA Payment.

97.     On or about May 31, 2024, counsel for Pizza Hut sent a reminder to counsel for the EYM Parties regarding payment of the Past-Due LTRA Payment.

98.     As of June 7, 2024, the EYM Parties have not cured multiple defaults, including the LTRA Payment Default and others specified in the LTRA Default.

---

[7] Among other issues facing the EYM Parties, a representative of vendor DoorDash, Inc. contacted the EYM Parties on or about June 3, 2024, regarding a past-due balance and pending deactivation of EYM Pizza of Georgia, LLC's DoorDash account. In addition, on or around June 4, 2024, VeriFone, a supplier of credit card payment terminals, informed PHLLC that it will not process any orders by the EYM Parties for critical replacement hardware for the operations of the restaurants because the EYM Parties have unpaid balances with Verifone. One of the consequences of a failure to replace such hardware includes that the affected restaurants will be unable to accept credit cards for payment as of July 1, 2024.

I.     **The EYM Parties' sustained failure to comply with multiple Reinstatement Conditions prompted Pizza Hut to terminate the LTRA and send notices of intent to terminate the Franchise Agreements' respective License Terms.**

99.     The EYM Parties' ongoing contractual breaches, mismanagement, and delays prompted Pizza Hut to send a notice of termination of the LTRA and notices of intent to terminate the Franchise Agreements' respective License Terms (collectively, "Post-LTRA Termination Notices," a compilation of which is attached hereto as Exhibit 25) on June 7, 2024.

100.     The EYM Parties remain responsible for all amounts that have come or shall come due under the Franchise Agreements.

101.     The EYM Parties owe approximately $2 million to Pizza Hut and other interested entities under the Franchise Agreements as of June 7, 2024.

### III.     CLAIMS

A.     **Count I: Breach of Contract – Franchise Agreements** (EYM Franchisees)

102.     Pizza Hut incorporates the foregoing allegations as though fully restated herein.

103.     Each of the Franchise Agreements constitutes a binding and enforceable contract between Pizza Hut and the applicable EYM Franchisee.

104.     Pizza Hut has performed or tendered performance of all of its obligations under and in connection with the Franchise Agreements.

105.     The EYM Franchisees, however, have failed and refused to comply with their obligations under their respective Franchise Agreements by, among other things, failing to pay all Monthly Service Fees and Advertising Fees that are due and owing and by closing at least one restaurant without authorization.

106.     The EYM Franchisees' failure and refusal to comply with their obligations under their respective Franchise Agreements constitutes material breach of the Franchise Agreements.

107.    As a direct and proximate result of the EYM Franchisees' failure to comply with their obligations under their respective Franchise Agreements, Pizza Hut has incurred monetary damages in an amount to be determined at trial. The damages include, but are not limited to, direct and consequential damages in the amount of approximately $2 million as of June 7, 2024.

108.    EYM Pizza of Georgia, LLC owes at least $70,000 as liquidated damages for the unauthorized closure of at least one of EYM Pizza of Georgia, LLC's restaurants.

109.    In addition, because of the EYM Franchisees' breaches of the Franchise Agreements, Pizza Hut has incurred reasonable and necessary attorneys' fees incurred in connection with this civil action.

### B.    Count II: Breach of Contract – Guaranties (Guarantor Defendants)

110.    Pizza Hut incorporates the foregoing allegations as though fully restated herein.

111.    The Guaranties constitute binding and enforceable contracts between Pizza Hut and the applicable Guarantor Defendants.

112.    Pizza Hut has performed or tendered performance of all of its obligations under and in connection with the Guaranties.

113.    Pursuant to the Guaranties, the Guarantor Defendants personally guaranteed the full payment and complete performance of the EYM Franchisees' obligations under the Franchise Agreements and agreed to indemnify Pizza Hut from any liability or expense resulting from the EYM Franchisees' failure to perform and comply with the terms and conditions of the Franchise Agreements.

114.    Despite their obligations as guarantors, the Guarantor Defendants have failed and refused to comply with their respective obligations under the Guaranties by, among other things,

failing to pay all Monthly Service Fees and Advertising Fees that are due and owing and continue to accrue.

115.    The Guarantor Defendants' failure and refusal to comply with their respective obligations under the Guaranties constitutes material breach of the Guaranties.

116.    As a direct and proximate result of the Guarantor Defendants' failure to comply with their respective obligations under the Guaranties, Pizza Hut has incurred monetary damages in an amount to be determined at trial. The damages include, but are not limited to, direct and consequential damages in the amount of approximately $2 million as of June 7, 2024.

117.    The Guarantor Defendants owe at least $70,000 as liquidated damages for the unauthorized closure of at least one of EYM Pizza of Georgia, LLC's restaurants.

118.    In addition, because of the Guarantor Defendants' breaches of the Guaranties, Pizza Hut has incurred reasonable and necessary attorneys' fees and expenses as damages, in addition to incurring reasonable and necessary attorneys' fees in this civil action.

**C.    Count III: Breach of Contract – Forbearance Agreement** (EYM Franchisees and Diaz)

119.    Pizza Hut incorporates the foregoing allegations as though fully restated herein.

120.    The Forbearance Agreement constitutes a binding and enforceable contract between Pizza Hut, on one hand, and Diaz and the EYM Franchisees on the other hand.

121.    Pizza Hut has performed or tendered performance of all of its obligations under and in connection with the Forbearance Agreement.

122.    Diaz and the EYM Franchisees, however, failed and refused to comply with their obligations under the Forbearance Agreement by, among other things, failing to meet Forbearance Conditions and refusing to execute a relationship agreement with Pizza Hut before Pizza Hut sent the Post-Forbearance Termination Notices.

123.    Diaz's and the EYM Franchisees' failure and refusal to comply with their obligations under the Forbearance Agreement constitutes material breach of the Forbearance Agreement.

124.    As a direct and proximate result of Diaz's and the EYM Franchisees' failure to comply with their obligations under the Forbearance Agreement, Pizza Hut has incurred monetary damages in an amount to be determined at trial. Pizza Hut has also incurred reasonable and necessary attorneys' fees and expenses as damages, in addition to incurring reasonable and necessary attorneys' fees and costs in this civil action.

**D.      Count IV: Breach of Contract – LTRA** (EYM Parties)

125.    Pizza Hut incorporates the foregoing allegations as though fully restated herein.

126.    The LTRA constitutes a binding and enforceable contract between Pizza Hut and the EYM Parties.

127.    Pizza Hut has performed or tendered performance of all of its obligations under and in connection with the LTRA.

128.    The EYM Parties, however, failed and refused to comply with their obligations under the LTRA by, among other things, failing to meet Reinstatement Conditions.

129.    The EYM Parties' failure and refusal to comply with their obligations under the LTRA constitutes material breach of the LTRA.

130.    As a direct and proximate result of the EYM Parties' failure to comply with their obligations under the LTRA, Pizza Hut has incurred monetary damages in an amount to be determined at trial. Pizza Hut has also incurred reasonable and necessary attorneys' fees and expenses as damages, in addition to incurring reasonable and necessary attorneys' fees and costs in this civil action.

**E.     Count V: Breach of Contract – Relationship Agreement** (EYM Parties)

131.     Pizza Hut incorporates the foregoing allegations as though fully restated herein.

132.     The Relationship Agreement constitutes a binding and enforceable contract between Pizza Hut and the EYM Parties.

133.     Pizza Hut has performed or tendered performance of all of its obligations under and in connection with the Relationship Agreement.

134.     The EYM Parties, however, failed and refused to comply with their obligations under the Relationship Agreement by, among other things, failing to report certain financial information to Pizza Hut and failing to timely retain an appraiser as defined in the Relationship Agreement.

135.     The EYM Parties' failure and refusal to comply with their obligations under the Relationship Agreement constitutes material breach of the Relationship Agreement.

136.     As a direct and proximate result of the EYM Parties' failure to comply with their obligations under the Relationship Agreement, Pizza Hut has incurred monetary damages in an amount to be determined at trial. Pizza Hut has also incurred reasonable and necessary attorneys' fees and expenses as damages, in addition to incurring reasonable and necessary attorneys' fees and costs in this civil action.

## IV.     ATTORNEYS' FEES

137.     Pizza Hut incorporates the foregoing allegations as though fully restated herein.

138.     The EYM Parties' actions and inactions have caused Pizza Hut to retain attorneys to protect its rights in this matter. Pursuant to the Franchise Agreements, the Guaranties, and applicable law, Pizza Hut is entitled to a judgment against the EYM Parties for the attorneys' fees Pizza Hut has incurred, including attorneys' fees as damages.

## V.    CONDITIONS PRECEDENT

139.    All conditions precedent to Pizza Hut's right to recovery for each claim alleged above have been performed, have occurred, and/or have been waived.

## VI.    PRAYER FOR RELIEF

Pizza Hut requests that the Court enter judgment against Defendants as follows:

1.  Award Pizza Hut monetary damages, including actual, consequential, and liquidated damages and attorneys' fees as damages, in an amount to be determined at trial;

2.  Award Pizza Hut its reasonable and necessary attorneys' fees;

3.  Award Pizza Hut its costs and expenses;

4.  Award Pizza Hut interest, including prejudgment and post-judgment, on the foregoing sums at the highest lawful rates; and

5.  Award all such other and further relief at law and in equity to which Pizza Hut may be entitled.

Dated: June 7, 2024.                    Respectfully submitted,


                                        */s/ Deborah S. Coldwell*
                                        Deborah S. Coldwell
                                            State Bar No. 04535300
                                            deborah.coldwell@haynesboone.com
                                        Jason N. Jordan
                                            State Bar No. 24078760
                                            jason.jordan@haynesboone.com
                                        J. Wilson Miller
                                            State Bar No. 24125326
                                            wilson.miller@haynesboone.com
                                        HAYNES AND BOONE, LLP
                                        2801 N. Harwood Street, Suite 2300
                                        Dallas, Texas 75201
                                        Telephone:     214-651-5000
                                        Telecopier:    214-651-5940

                                        **ATTORNEYS FOR
                                        PLAINTIFF PIZZA HUT, LLC**